**Kathryn G. Mantoan, OSB No. 174044**
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1120 NW Couch Street, Suite 200
Portland, OR  97209-4128
Telephone: 503.943.4800
Facsimile: 503.943.4801

**Michael D. Weil** (*pro hac vice* application forthcoming)
mweil@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
Telephone: 415.773.5700
Facsimile: 415.773.5759

Attorneys for Plaintiffs
Element Materials Technology Food US LLC and Exova, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ELEMENT MATERIALS TECHNOLOGY FOOD US LLC, a limited liability company, and EXOVA, INC., a corporation,<br><br>                                        Plaintiffs,<br><br>v.<br><br>NIDAL KAHL, an individual, and BIOGEN LABORATORY DEVELOPMENTS, LLC, a limited liability company,<br><br>                                        Defendants. | **COMPLAINT FOR DAMAGES**<br><br>Breach of Contract; Fraudulent Misrepresentation; Breach of the Implied Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty and the Common Law Duty of Loyalty; Tortious Interference With Economic Relations<br><br>**DEMAND FOR JURY TRIAL** |

4125-6880-6426

Plaintiffs Element Materials Technology Food US LLC (formerly known as Exova Food US LLC) and Exova, Inc. (collectively, "Element" or "Plaintiffs"), by and through their undersigned counsel, bring this Complaint against Defendants Nidal Kahl and Biogen Laboratory Developments, LLC ("Biogen") (collectively, "Defendants"), and allege as follows:

## NATURE OF DISPUTE

1.     This case stems from an illegal attack on Element by Mr. Kahl, a former manager of Element's Portland Food laboratory who founded a competing business while employed by Element and proceeded to illegally grow the competing business by: (a) stealing and misappropriating Plaintiffs' confidential information; (b) deliberately misrepresenting the nature of the competing business to Plaintiffs and their customers to gain business; (c) inflating operating costs within Plaintiffs to financially benefit himself and his competing business; and (d) improperly raiding Plaintiffs' customers.

2.     Prior to resigning, Mr. Kahl misrepresented the nature of his competing business, Biogen, to Plaintiffs as a noncompetitive consulting business, whose work would be complimentary to Plaintiffs' business.  Mr. Kahl made these explicit misrepresentations while contemporaneously entering into a written retention agreement with Element through which he promised to "act in the very best interests of the Element group" in exchange for $125,000 in payments (in addition to his salary).  Mr. Kahl received $100,000 pursuant to this agreement, in addition to drawing his regular salary.  Yet prior to his resignation, Mr. Kahl misappropriated Plaintiffs' confidential information, improperly poached Plaintiffs' customers in advance of his exit, and acted for his own personal financial benefit at the expense of Plaintiffs, including by manipulating pricing to syphon off profits and better position himself and Biogen for success after his departure from Element's employ.

COMPLAINT FOR DAMAGES

3.      At the end of 2018, Mr. Kahl effectively resigned from Element.  Soon thereafter, Plaintiffs received notice that numerous customers moved the entirety of their business to Mr. Kahl's competing company, Biogen.  Plaintiffs have since learned that Mr. Kahl continues to exploit Element's premier reputation by representing himself as being employed by Element despite his resignation, and misrepresenting to customers that their products will continue to be tested by Element despite them signing a contract with Biogen.

4.      Defendants Biogen and Mr. Kahl have tortiously interfered with Plaintiffs' contractual relationships and prospective economic advantage.  In addition, Mr. Kahl has breached his duties as a fiduciary of Element and his contractual promises to Element.

### PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff Element Materials Technology Food US LLC is a Delaware single member limited liability company with its principal place of business in Warren, Michigan.  The owner of Plaintiff Element Materials Technology Food US LLC is Element Materials Technology Transportation and Industrials US LLC, a Delaware single member limited liability company with its principle place of business in Warren, Michigan.  Element Materials Technology Transportation and Industrials US LLC is owned by Exova, Inc.  Prior to approximately June 2019, Element Materials Technology Food US LLC was known as Exova Food US LLC.

6.      Plaintiff Exova, Inc. is a Delaware corporation with its principal place of business in Glendale Heights, Illinois.  Prior to approximately May 2009, Exova, Inc. was known as Bodycote Materials Testing, Inc.

7.      Upon information and belief, Defendant Nidal Kahl is a citizen of Oregon, residing in the vicinity of Clackamas, Oregon.

COMPLAINT FOR DAMAGES

8.     Upon information and belief, Defendant Biogen Laboratory Developments, LLC is an Oregon limited liability company whose members are all domiciled in Oregon.

9.     This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between all Plaintiffs and all Defendants, and the amount in controversy exceeds the jurisdictional amount.  The total value of the relief and damages sought by Plaintiffs exceeds $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Defendant Kahl because he is domiciled in Oregon, and because many of Defendant Kahl's actions that give rise to the claims alleged herein occurred in connection with his employment at Element's food testing facility located in Portland, Oregon.

11.     This Court has personal jurisdiction over Defendant Biogen because it is a citizen of Oregon, and because, as described below, Defendant Biogen tortiously interfered with Plaintiffs' business relations by improperly soliciting Oregon customers to use Biogen for their testing services rather than Element's Portland food laboratory, thereby causing actual injury in Oregon.

12.     Venue is proper in the United States District Court for the District of Oregon for Plaintiffs' claims against Defendants Kahl and Biogen pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein arose in this District.

**FACTS**

A.     **Relationship Between Portland Food, Exova, Inc., and Element Materials Technology Food US LLC**

13.     Portland Food is a food microbiology laboratory located in Portland, Oregon, that conducts an array of routine and specialized food quality and food safety testing.  Services offered include testing samples for e. coli, listeria, salmonella, yeast, and mold.  The microbiology laboratory operates alongside a chemistry laboratory that conducts routine nutritional analysis and other food chemistries, performing tests for the presence of specific substances such as lead, cadmium, arsenic, sodium, and fat.

14.     Food Products Laboratories, Incorporated first registered to do business in Oregon on December 3, 1984 and operated as an independent testing laboratory until January 1, 2006, when it was acquired by and merged into Exova, Inc., another laboratory testing company.  On or about June 28, 2017, Exova, Inc. was acquired and joined the Element Materials Technology group of companies.

15.     Portland Food was an important consideration for the Element Materials Technology group of companies in the decision to acquire Exova, Inc., as Exova, Inc. had spent extensive time and money developing client relationships, a cost structure, pricing strategy, and testing methods and procedures – all of which would assist the Element Materials Technology group of companies in gaining a competitive operation in the Oregon testing market.

16.     In mid-2018, the Element Materials Technology group of companies directed the creation of a new entity, Exova Food US LLC, which would own and operate the Portland Food laboratory.  In June 2019, Exova Food US LLC was renamed Element Materials Technology Food US LLC.

17.     Exova, Inc. was Mr. Kahl's employer at all relevant times prior to August 1, 2018.  Effective August 1, 2018, Element Materials Technology Food US LLC (known then as Exova Food US LLC) became Mr. Kahl's employer.

**B.    Biogen Laboratory Developments, LLC**

18.    Biogen was registered as a limited liability company in Oregon on March 6, 2001.

19.    Mr. Kahl helped found Biogen and is listed on relevant business records as the company's manager.  Mr. Kahl currently acts as Biogen's director, a position he has held since the company was founded.

20.    On information and belief, Biogen is a Portland-based laboratory and consulting group offering analytical design and reports, third-party testing, sampling, research, and consulting, to food manufacturers, restaurants, product developers, agencies, and more.

21.    As of its April 21, 2015 Amended Annual Report filing with the Oregon Secretary of State, Biogen described its business activity as "laboratory services and consulting[,] quality assurance programs and regulatory compliance[, and] research and product development."  The description did not include any reference to "analytical testing services."

22.    On information and belief, Biogen is an accredited testing center with the ability to run a wide range of both microbiological and chemical tests, including testing for e. coli, listeria, salmonella, yeast, mold, and more.

23.    Biogen has been an accredited testing center since at least July 13, 2018.

24.    Biogen listed "analytical testing services" among its business activities in filings with the Oregon Secretary of State in 2016, 2017, 2018, and 2019.  Biogen's 2016 and 2017 filings further described these activities as "analytical testing services with a focus on the food, supplement, and environmental industry."

**C.    Mr. Kahl's Respective Roles at Portland Food and Biogen**

25.    In the years before the acquisition of Exova, Inc. by the Element Materials Technology group, Mr. Kahl was employed as the General Manager of Portland Food and was principally responsible for supervising and directing laboratory technicians in their everyday work, overseeing invoicing and budgeting, and acting as the key point of contact for clients.

26.    In his role as General Manager, Mr. Kahl was entrusted with and exposed to confidential and proprietary information, including but not limited to Portland Food's customer acquisition strategies, pricing, fee structure, and customer lists including up-to-date contact information.

27.    Mr. Kahl remained employed as General Manager with Portland Food through the Exova, Inc. acquisition and the formation of Exova Food US LLC.  In this capacity, Mr. Kahl had continued access to confidential information on a day-to-day basis.

28.    Around the end of 2017 or beginning of 2018, Element management learned that Mr. Kahl had previously induced Exova, Inc. to agree to an informal strategic arrangement whereby Portland Food would refer customers to Biogen when they required services beyond the scope of Portland Food's offerings, such as consulting services, and Biogen would refer customers to Exova, Inc. for testing services.  Mr. Kahl had secured this arrangement by representing to Exova, Inc. that Biogen's business was limited to consulting services and was complimentary to, not competitive with, Portland Food.

29.    By spring of 2018, Mr. Kahl's employment relationship with Element management had become strained.  Soon thereafter, Element and Mr. Kahl began negotiating a retention agreement, as Element sought assurances that Mr. Kahl would continue to work on behalf of Element and further the interests of Portland Food notwithstanding his expressed dissatisfaction.

COMPLAINT FOR DAMAGES

30.    In approximately the summer of 2018, Element learned that Mr. Kahl was listed as a Director at Biogen while acting in his role as General Manager for Portland Food.  Element leadership met with Mr. Kahl to discuss his role with Biogen.  Mr. Kahl repeatedly represented that his company, Biogen, was not engaged in any testing and that the company merely operated in a "consulting" capacity.

31.    Concerned about retaining Mr. Kahl's knowledge as the long-time General Manager of Portland Food to help transition the laboratory after the acquisition, Element offered Mr. Kahl a phased retention bonus dependent on Mr. Kahl signing a written contract entitled "Retention Letter and Agreement" (the "Agreement"), attached hereto as Exhibit A.

32.    The Agreement, executed on August 14, 2018, specifically states that a retention bonus of $125,000 (less applicable taxes and withholdings) was being offered in exchange for Mr. Kahl's "continued support of Element during [its] integration activities, and [Mr. Kahl's] stewardship of the Portland Food business to deliver its very best financial performance in 2018."

33.    The Agreement lists explicit conditions on which payment is contingent. Specifically, the Agreement provides that during the period of the Agreement "[Mr. Kahl] will constructively and cooperatively work with the Element leadership team, acting in the very best interests of the Element group, to complete the potential sale of the business and/or hand-off [his] responsibilities as General Manager in a professional manner."

34.    The Agreement goes on to outline a payment schedule, providing for a series of five $25,000 payment installments.  The Agreement provides that the final installment would be made no later than ten business days after December 31, 2018 assuming all of the Agreement's

COMPLAINT FOR DAMAGES

conditions were satisfied and that Mr. Kahl continued his employment with Element through December 31, 2018.

35.    Throughout the remainder of 2018, Element continued to pay Mr. Kahl his regular salary for his work as General Manager in addition to the retention payments under the Agreement as they came due.

36.    Mr. Kahl ceased working as General Manager at Portland Food on December 31, 2018, effectively terminating his employment with Element.

37.    Prior to Mr. Kahl's resignation, Element had made four lump sum payments to Mr. Kahl pursuant to the Agreement, totaling $100,000 (less applicable taxes and withholdings).

38.    To date, Element has not made the final payment installment under the Agreement, as Mr. Kahl is not entitled to it for reasons detailed in this Complaint.

**D.    Mr. Kahl's Wrongful Conduct While Employed by Element**

39.    On information and belief, during his employment with Element, Mr. Kahl intentionally manipulated invoicing for matters involving Biogen in order to increase profits to Biogen and himself at the expense of Plaintiffs.

40.    On information and belief, during his employment with Element, Mr. Kahl intentionally and improperly diverted testing work to Biogen while acting as General Manager for Portland Food and in spite of his separate, contractual obligations to Element pursuant to the Agreement.

41.    During his employment with Element, Mr. Kahl misrepresented to Element officials the nature of Biogen's business.  Specifically, Mr. Kahl misrepresented that the company he founded, Biogen, was *not* a competitor of Portland Food and did not provide competing testing services.  These representations were false.

COMPLAINT FOR DAMAGES

**E.    Mr. Kahl's Wrongful Conduct After Resigning from Element**

42.    On information and belief, Mr. Kahl has continued to use Plaintiffs' confidential information, including but not limited to Plaintiffs' customer lists and pricing guides, to poach customers from Portland Food.

43.    On information and belief, Mr. Kahl has approached Portland Food customers and has secured long term service contracts favorable to Biogen while misrepresenting to those customers that he continues to be employed by Element.

44.    On information and belief, Mr. Kahl continues to use and exploit Plaintiffs' branding to secure favorable terms and treatment from clients.

**F.    Biogen's Tortious Interference with Plaintiffs' Business Relations**

45.    On information and belief, Biogen knew or had reason to know of Portland Food's customer-client relationships and proceeded to solicit these customers using Plaintiffs' confidential information that Biogen knew had been improperly and wrongfully obtained by Mr. Kahl.

46.    On information and belief, Biogen knew or had reason to know that at the time of many of these communications and solicitations, Mr. Kahl was bound by his duties as an employee of Element and pursuant to his contractual obligations to Element.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

**(against Defendant Kahl)**

47.     The allegations contained in paragraphs 1 through 46 are incorporated by reference herein.

48.     On August 14, 2018, while employed by Element as General Manager for Portland Food, Defendant Kahl agreed to the Agreement (as defined in paragraph 31 above and attached as Exhibit A hereto).

49.     The Agreement was supported by adequate consideration, including but not limited to Element's pay-out of a retention bonus in the total gross amount of $125,000 (less applicable taxes and withholdings).

50.     The Agreement conditioned payment on a number of conditions, including requiring Kahl to "constructively work with the Element leadership team" and to act "in the very best interests of the Element group."

51.     Defendant Kahl breached the Agreement by refusing to cooperate with Plaintiffs and, on the contrary, continually diverting business from Plaintiffs to Biogen.

52.     Defendant Kahl further breached the Agreement by operating a competing business, which is the same or substantially similar to one or more testing laboratories operated by Plaintiffs, after making repeated representations during his employment at Portland Food that Biogen was not a competitor.

53.     Defendant Kahl additionally breached the Agreement by soliciting entities that were customers of Element's Portland Food laboratory prior to the time of his resignation.

54.     As a result of Defendant Kahl's breaches of his contractual obligations under the Agreement, Element is entitled to repayment of the $100,000 (less applicable taxes and withholdings) paid to Defendant Kahl under that Agreement.

COMPLAINT FOR DAMAGES

55.     As a further result of Defendant Kahl's breaches of his contractual obligations under the Agreement, Defendant Kahl has forfeited his right to the final payment of $25,000 and Element is not obligated to make that payment.

## SECOND CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

### (against Defendant Kahl)

56.     The allegations contained in paragraphs 1 through 55 are incorporated by reference herein.

57.     Around the time that the Agreement was negotiated, Defendant Kahl made repeated representations to Element officials that Biogen was *not* engaged in testing and was operating independently of Portland Food as a non-competitive consultant.

58.     While negotiating the Agreement, Defendant Kahl failed to disclose material facts, including but not limited to the fact that the company he founded, Biogen, offered many of the same services Portland Food offered and was actively engaged in direct competition with Portland Food.

59.     As Director and founder of the competing company, Biogen, Defendant Kahl knew or should have known that the company was a direct competitor of Portland Food.

60.     Defendant Kahl's affirmative statements and failure to disclose materials facts resulted in him misrepresenting his company, Biogen, as a non-competing business when, in fact, it was and is in direct competition with Portland Food.

61.     Defendant Kahl was well aware from the ongoing communications and negotiations that Element's primary motive for entering into the Agreement was to ensure Defendant Kahl's loyalty and promotion of Plaintiffs' business interests.

COMPLAINT FOR DAMAGES

62.     Defendant Kahl either intentionally misled Element, knew he was misleading Element, or recklessly disregarded that he was misleading Element with respect to the nature of his competing business, Biogen, to secure a $125,000 retention bonus.

63.     Element reasonably relied on Defendant Kahl's repeated representations about the nature of Biogen's business, entered into the Agreement, and made $100,000 (less applicable taxes and withholdings) in payments to Defendant Kahl per the Agreement.

64.     As a result of Defendant Kahl's fraudulent misrepresentation, Plaintiff Element was fraudulently induced into entering the contract and has suffered $100,000 (less applicable taxes and withholdings) in damages.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (against Defendant Kahl)

65.     The allegations contained in paragraphs 1 through 64 are incorporated by reference herein.

66.     Defendant Kahl's Agreement to constructively and cooperatively work with the Element leadership team and act in the very best interests of Element established an implied duty of good faith and fair dealing.  This duty obligated Defendant Kahl to cooperate with Element so that each party could obtain the full benefit of the performance of the Agreement.

67.     Defendant Kahl's actions have exhibited numerous instances of bad faith and unfair dealing.

68.     Defendant Kahl exhibited bad faith by misrepresenting to Element that Biogen was not in direct competition with Portland Food despite Defendant Kahl actively knowing this

to be false and engaging in an ongoing campaign to divert business from Portland Food to his competing laboratory.

69.     Defendant Kahl also exhibited bad faith by contemporaneously diverting funds from Portland Food to Biogen through improper invoicing and by soliciting numerous customers to stop using the Portland Food laboratory for their testing, and to use Biogen instead, all while Defendant Kahl was still employed by Element.

70.     As a result of Defendant Kahl's breach of the duty of good faith and fair dealing, Element has suffered financial damages including but not limited to the loss of customers improperly poached by Kahl during and since Kahl's employ with Element, and the loss of product testing business improperly diverted by Kahl to his competing business venture Biogen during and since Kahl's employ with Element.

## FOURTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY AND COMMON LAW DUTY OF LOYALTY

### (against Defendant Kahl)

71.     The allegations contained in paragraphs 1 through 70 are incorporated by reference herein.

72.     As a result of Defendant Kahl's employment relationship with Element, and knowledge of Element's expectation of loyalty, Kahl owed Element a duty of loyalty during his employment.

73.     While still employed by Element as Portland Food's General Manager and collecting a salary, Defendant Kahl built his competing business, Biogen, using Plaintiffs' time and resources including confidential information such as customer lists and pricing guides.

COMPLAINT FOR DAMAGES

74.     Additionally, while still employed by Element as Portland Food's General Manager and collecting a salary, Defendant Kahl actively solicited clients for Biogen and improperly diverted business away from Portland Food to Biogen.

75.     These actions, among others, constitute a breach of Defendant Kahl's duty of loyalty to Element.

76.     As a result of Defendant Kahl's breach, Element has suffered financial damages including but not limited to the salary paid to Defendant Kahl, lost business value, the loss of customers improperly poached by Kahl during and since Kahl's employ with Element, and the loss of product testing business improperly diverted by Kahl to his competing business venture during and since Kahl's employ with Element.

### FIFTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

### (against Defendant Biogen)

77.     The allegations contained in paragraphs 1 through 76 are incorporated by reference herein.

78.     Plaintiffs had and/or have business relationships with various food companies, including but not limited to Walt's Meats, Morash Meats, Primal Pet, Wild Planet, U.S. Bakery, and Portland Specialty Baking, by virtue of contracts and ongoing business expectancies between Plaintiffs and these customers.

79.     Defendant Biogen knew of the relationships Plaintiffs had and/or have with these various food companies and customers.

80.     Defendant Biogen is a third party to the relationship between Plaintiffs and their customers.

COMPLAINT FOR DAMAGES

81.     Defendant Biogen intentionally interfered with Plaintiffs' business relationships using improper means, including but not limited to using improperly obtained confidential customer information, misrepresenting the nature of the services offered by Portland Food, and improperly soliciting customers via an agent (namely, Defendant Kahl) at a time when he was still employed by Element.

82.     As a result of Defendant Biogen's tortious conduct, Element has suffered financial damages including but not limited to lost business value, the loss of customers improperly poached by Kahl during and since Kahl's employ with Element, and the loss of product testing business improperly diverted by Kahl to his competing business venture during and since Kahl's employ with Element.

**PRAYER FOR RELIEF**

Plaintiffs, accordingly, pray for the following relief:

1.  Judgment against Defendants for all actual, consequential, and punitive damages in an amount in excess of $75,000, as may be provided by law;

2.  Judgment against Defendants for their unjust enrichment in excess of $75,000, as may be provided by law;

3.  A declaration that Plaintiffs owe nothing further to Defendant Kahl under the Agreement, and on the contrary Defendant Kahl is required to repay amounts wrongfully obtained;

4.  For contractual and statutory attorney's fees and costs;

5.  For pre-judgment interest on liquidated sums;

6.  For post-judgment interest on any money judgment until paid in full; and

/ / /

COMPLAINT FOR DAMAGES

7. For any other and further relief as the court may deem just and equitable.


DATED: September 16, 2019                    ORRICK, HERRINGTON & SUTCLIFFE, LLP

                                             */s/ Kathryn G. Mantoan*
                                             KATHRYN G. MANTOAN, OSB No. 174044
                                             kmantoan@orrick.com
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             1120 NW Couch Street, Suite 200
                                             Portland, OR  97209-4128
                                             Telephone: 503.943.4800
                                             Facsimile: 503.943.4801

                                             Attorneys for Plaintiffs

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand trial by jury of all issues so triable under the law.


DATED: September 16, 2019                ORRICK, HERRINGTON & SUTCLIFFE, LLP

                                          */s/ Kathryn G. Mantoan*
                                          KATHRYN G. MANTOAN, OSB No. 174044
                                          kmantoan@orrick.com
                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                          1120 NW Couch Street, Suite 200
                                          Portland, OR  97209-4128
                                          Telephone: 503.943.4800
                                          Facsimile: 503.943.4801

                                          Attorneys for Plaintiffs

# EXHIBIT A



August 10, 2018

Mr. Nidal Kahl

Re: Retention Letter and Agreement

**PERSONAL & CONFIDENTIAL**

Dear Mr. Kahl,

Following on our discussion from July 20, 2018, I would like to confirm Element's intention to offer you a retention bonus in the gross amount of $125,000 (less applicable taxes and withholdings).  The retention bonus is in recognition of your continued support of Element Materials Technology during our integration activities, and your stewardship of the Portland Food business to deliver its very best financial performance in 2018.  The retention bonus will be paid on a schedule as outlined below, and the conditions of such payments will be based on the following.

- *You sign this agreement in the space provided below and return it to me no later than August 17, 2018.*

- *During the period of this agreement, and after the agreed scheduled payments are made, you will constructively and cooperatively work with the Element leadership team, acting in the very best interests of the Element group, to complete the potential sale of the business and/or hand-off your responsibilities as General Manager in a professional manner should you decide to resign from your position after December 31, 2018.*

- *You must not resign your employment with Element Materials Technology or be terminated for misconduct, poor performance and/or personal behavior as set forth in the current Employee handbook in Policy 08-Personal Behavior or for Cause as defined below.  If you do, then you will forfeit any remaining unearned payments scheduled based on the payment timeline outlined in this agreement.*

*"Cause" exists if Employee:*

      (A)    *Commits any act of gross misconduct or gross negligence affecting the business of any Group Company;*

      (B)    *Commits any breach of the duty of candor and loyalty to any Group Company;*

      (C)    *Commits any material or persistent breach of any of the terms or conditions of this Agreement, including any willful neglect of or refusal to carry out any of his duties, or to comply with any reasonable instruction given to him by the Chief Executive Officer of the Group;*

      (D)    *Ceases to be eligible to reside or work in the United States;*

      (E)    *Is convicted of any crime (other than a crime under any road traffic legislation for which a penalty of imprisonment cannot be imposed);*

 element™

      (F)    *Is disqualified from holding office in any company under applicable legislation or is disqualified or disbarred from membership of, or is subject to any serious disciplinary sanction by, any regulatory body within the industry, which undermines the confidence of the Board acting reasonably in Employee's continued employment with Company;*

      (G)    *Commits any fraud or dishonesty or acts in any way which, in the reasonable opinion of the Board, brings Employee or any Group Company into disrepute or discredit or is materially adverse to the interests of any Group Company;*

Should you accept the following requirements and conditions outlined above, you will receive a lump sum payment in the gross amount of $25,000.00 (less applicable taxes and withholdings) upon signing this retention agreement, and payment will be made within five (5) business days following receipt of the signed agreement by myself and Tom Youngblood in Human Resources.

You will receive an additional lump sum payment in the gross amount of $25,000.00 (less applicable taxes and withholdings) if you continue your employment with Element Materials Technology through September 30, 2018.  This payment will be made to you no later than ten (10) business days following September 30, 2018.

You will receive an additional lump sum payment in the gross amount of $25,000.00 (less applicable taxes and withholdings) if you continue your employment with Element Materials Technology through October 31, 2018.  This payment will be made to you no later than ten (10) business days following October 31, 2018.

You will receive an additional lump sum payment in the gross amount of $25,000.00 (less applicable taxes and withholdings) if you continue your employment with Element Materials Technology through November 30, 2018.  This payment will be made to you no later than ten (10) business days following November 30, 2018.

Lastly, you will receive an additional lump sum payment in the gross amount of $25,000.00 (less applicable taxes and withholdings) if all of the conditions above are satisfied and you continue your employment with Element Materials Technology through December 31, 2018.  This payment will be made by no later than ten (10) business days after December 31, 2018.

*Note that your employment continues to remain "at will," meaning either you and/or the Company have the right to terminate your employment without prior notice at any time and for any reason.*

Please do not hesitate to contact me directly should you have any questions about the retention bonus agreement.  Element appreciates your past commitments to Exova and now Element Materials Technology.  We look forward to your continued focused commitment, and leadership, to ensure Portland Food and Element Group are successful in 2018 and in the future.

 element™

Sincerely,

John R. Nelson
Executive Vice President, Transportation and Industrials
Element Materials Technology

**Acknowledgement and Acceptance:**
I acknowledge and accept this Employment Offer and the terms and conditions stated.  As always, remuneration changes of any kind are to be kept confidential.

_____     ___8_/_14___/2018
Nidal Kahl                                                              Date

CC:     Tom Youngblood