IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ELEMENT MATERIALS TECHNOLOGY FOOD US LLC and EXOVA, INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **NIDAL KAHL and BIOGEN LABORATORY DEVELOPMENTS, LLC,** <br><br> Defendants. | Case No. 3:19-cv-1491-SI <br><br> **OPINION AND ORDER** |

Kathryn G. Mantoan, ORRICK HERRINGTON & SUTCLIFFE LLP, 1120 NW Couch Street, Suite 200, Portland, OR 97209; Michael D. Weil, ORRICK HERRINGTON & SUTCLIFFE LLP, 405 Howard Street, San Francisco, CA 94105. Of Attorneys for Plaintiffs.

Steven M. Wilker and William T. Gent, TONKON TORP LLP, 888 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

  Plaintiffs Element Materials Technology Food US LLC ("Element") and Exova, Inc. ("Exova") bring this lawsuit against Defendants Nidal Kahl (Mr. Kahl") and Biogen Laboratory Developments, LLC ("Biogen") (The Court refers to Mr. Kahl and Biogen collectively as "Defendants.") Plaintiffs assert five causes of action. Defendants move to dismiss three of the five causes of action for failure to state a claim. Defendants argue that Plaintiffs have not

adequately pleaded fraudulent misrepresentation, breach of fiduciary duty, and intentional interference with economic relations. Because the Complaint adequately states these claims, the motion is denied.[1]

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

---

[1] The Court does not believe that oral argument is likely to be helpful in resolving the pending motion. *See* LR 7-1(d)(1).

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**BACKGROUND**

As alleged in Plaintiffs' Complaint, Portland Food Laboratory ("Portland Food") is a food microbiology laboratory. ECF 1 ¶ 13. It conducts food quality and safety testing, such as testing samples for e. coli, listeria, salmonella, yeast, and mold. *Id.* Exova owned and operated Portland Food independently until June 2017, when Element's parent company acquired Exova. Exova, as a subsidiary of Element's parent company, continued to operate Portland Food until mid-2018, when Element—a new subsidiary also controlled by the parent company—took over. Element currently owns and operates Portland Food. Mr. Kahl was a General Manager at Portland Food under both Exova and Element. As General Manager, Mr. Kahl was a key point of contact for clients and had access to confidential and proprietary information. *Id.* ¶ 26.

At the same time he worked for Portland Food, Mr. Kahl was also running his own business. He founded Biogen in 2001 and has served as its director ever since. *Id.* ¶¶ 18, 19. Mr. Kahl had an informal arrangement with Exova through which Portland Food would refer customers to Biogen when they required services beyond the scope of Portland Food's offerings, such as consulting services, and Biogen would refer customers to Exova for testing services. *Id.* ¶ 28. Mr. Kahl obtained this agreement by representing to Exova that Biogen's business was

limited to consulting services and did not directly compete with Portland Food's analytical testing business. *Id.*

In 2015, Biogen described its business as "laboratory services and consulting, quality assurance programs, regulatory compliance, and research and product development." *Id.* ¶ 21. In 2016, Biogen updated its business activities description to include the phrase "analytical testing services," which was repeated in Biogen's filings with the Oregon Secretary of State in 2016, 2017, 2018, and 2019. *Id.* ¶ 24. Biogen further stated that it offered "analytical testing services with a focus on the food, supplement, and environmental industry." *Id.* Biogen also has been an accredited testing center since at least July 2018. *Id.* ¶ 23.

Soon after Element took over Portland Food in mid-2018, Mr. Kahl started to become dissatisfied with Element's management. *Id.* ¶ 29. Unaware of the true scope of Biogen's activities, Element negotiated a retention agreement (the "Agreement") with Mr. Kahl. During these negotiations, Mr. Kahl represented to Element management that his company, Biogen, operated only in a consulting capacity and did not offer any testing services. *Id.* The final version of the Agreement offered Mr. Kahl a retention bonus of $125,000, paid in five monthly $25,000 installments. ECF 1 at 20-21. In exchange for that bonus, Mr. Kahl agreed to "constructively and cooperatively work with the Element leadership team, acting in the very best interests of the Element group, to complete the potential sale of the business and/or hand-off [his] responsibilities as General Manager in a professional manner." ECF 1 at 20. Mr. Kahl resigned on December 31, 2018, after collecting $100,000 as part of his retention bonus under the Agreement. ECF 1 ¶ 36. Element did not pay Mr. Kahl the final $25,000 installment. *Id.* ¶ 38.

Plaintiffs allege that Mr. Kahl, while negotiating the Agreement, intentionally failed to disclose that Biogen directly competed with Element by offering analytical testing services and

that Mr. Kahl made affirmative representations to the same effect. Plaintiffs also allege that, while working as General Manager at Portland Food, Mr. Kahl:

- Increased Biogen's profits by intentionally manipulating invoices on matters of Portland Food's business involving Biogen. *Id.* ¶ 39.

- Intentionally diverted testing work to and actively solicited clients for Biogen, despite his contractual obligation to act in Element's best interests. *Id.* ¶¶ 40, 74.

- Used Element's confidential resources (including customers lists and pricing guides) to build Biogen's business. *Id.* ¶ 73.

According to Plaintiffs, Mr. Kahl continued his allegedly wrongful conduct after he resigned from Element in December 2018. Plaintiffs allege that Mr. Kahl continues to solicit customers using improperly obtained confidential information, sometimes while misrepresenting to those customers that he still works for Element. *Id.* ¶ 43, 44.

## DISCUSSION

Defendants challenge Plaintiffs' second, fourth, and fifth claims for relief. The Court addresses each cause of action in turn.

**A. Second Cause of Action: Fraudulent Misrepresentation**

Defendants argue that Plaintiffs' fraudulent misrepresentation claim is deficient in two ways. First, they assert that it does not meet the particularity requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Second, they state that Plaintiffs have not sufficiently alleged all elements of fraudulent misrepresentation.

**1. Rule 9(b) Requirements**

For claims sounding in fraud, Rule 9(b) sets a heightened pleading requirement, such that a claim for fraudulent misrepresentation must state the content of the allegedly false statements and "the time [and] place . . . of the false representations as well as the identities of the parties to the misrepresentation." *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977 (D. Ariz. 2013) (quoting

that Mr. Kahl made affirmative representations to the same effect. Plaintiffs also allege that, while working as General Manager at Portland Food, Mr. Kahl:

- Increased Biogen's profits by intentionally manipulating invoices on matters of Portland Food's business involving Biogen. *Id.* ¶ 39.

- Intentionally diverted testing work to and actively solicited clients for Biogen, despite his contractual obligation to act in Element's best interests. *Id.* ¶¶ 40, 74.

- Used Element's confidential resources (including customers lists and pricing guides) to build Biogen's business. *Id.* ¶ 73.

According to Plaintiffs, Mr. Kahl continued his allegedly wrongful conduct after he resigned from Element in December 2018. Plaintiffs allege that Mr. Kahl continues to solicit customers using improperly obtained confidential information, sometimes while misrepresenting to those customers that he still works for Element. *Id.* ¶ 43, 44.

## DISCUSSION

Defendants challenge Plaintiffs' second, fourth, and fifth claims for relief. The Court addresses each cause of action in turn.

**A. Second Cause of Action: Fraudulent Misrepresentation**

Defendants argue that Plaintiffs' fraudulent misrepresentation claim is deficient in two ways. First, they assert that it does not meet the particularity requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Second, they state that Plaintiffs have not sufficiently alleged all elements of fraudulent misrepresentation.

**1. Rule 9(b) Requirements**

For claims sounding in fraud, Rule 9(b) sets a heightened pleading requirement, such that a claim for fraudulent misrepresentation must state the content of the allegedly false statements and "the time [and] place . . . of the false representations as well as the identities of the parties to the misrepresentation." *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977 (D. Ariz. 2013) (quoting

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks omitted). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *See* Fed. R. Civ. P. 9(b).

Defendants argue that Plaintiffs' Complaint is too general to satisfy the particularity requirements of Rule 9(b). Plaintiffs, however, identified the "who, what, when, where, and how" of the alleged fraudulent misrepresentations, as well as why they were false and what about the alleged misrepresentations were false. *Cafasso*, 637 F.3d at 1055. Mr. Kahl told Defendants that Biogen, his company, did not engage in any testing and only operated in a consulting capacity. ECF 1 ¶ 30. That is the "what." Plaintiffs pleaded that this was a misrepresentation because Biogen, according to its own filings, *did* engage in "analytical testing services." ECF 1 ¶¶ 24, 57. That is why it was false and what about it was false. Mr. Kahl made these alleged misrepresentations to Element's leadership (the "who") during negotiations in the summer of 2018 (the "when" and "how"). The correspondence attached to the Complaint provides even more detail. It reflects discussions that occurred in July and August 2018 between Mr. Kahl and John R. Nelson, Element's Executive Vice President for Transportation and Industrials. *See* ECF 1 at 20 (referencing "our discussion from July 20, 2018"). Thus, Plaintiffs have "given sufficient information for defendants[s] to be aware of the conduct alleged against [them]." *Travis v. Knappenberger*, 2000 WL 1853084 at 658-59. Any further details may be obtained through discovery.

### 2. Elements of Fraudulent Misrepresentation

Defendants also contend that Plaintiffs have not pleaded that it was Defendants' "intent that [their] representation should be acted on by the plaintiff and in the manner reasonably contemplated." *Smallwood v. Fisk*, 146 Or. App. 695, 700 (1997) (describing the "intent" element of fraudulent representation). Defendants also argue that Plaintiffs have not pleaded their "ignorance of [the representation's] falsity . . . reliance on [the representation's] truth . . . right to rely on the representation" and "resulting injury." *See id.* (describing the "reasonable reliance" elements of fraudulent misrepresentation).

The heightened pleading requirements under Rule 9(b) do not apply to allegations of intent. *See Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (citation and quotation marks omitted) (holding that "the heightened pleading standard [under Rule 9(b)] only applies to the circumstances of the fraud and not to the defendant's state of mind"). To allege adequately intent to deceive, Plaintiffs need only "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 13 F. Supp. 3d 1116, 1125 (D. Or. 2014) (quotation marks omitted). Mr. Kahl was the director and founder of Biogen. Biogen engaged in "analytical testing services" according to its business activities filings with the Oregon Secretary of State in 2016, 2017, 2018, and 2019. ECF 1 ¶ 24. These two facts alone "plausibly suggest" that Mr. Kahl knew that his assertion to Element officials that Biogen did not provide testing services was false. *See Starr*, 652 F.3d at 1216 (holding that when there are two alternative explanations, a complaint can be dismissed only when the defendant's explanation is so convincing that the plaintiff's explanation is implausible).

Plaintiffs have also sufficiently pleaded specific intent to deceive. They allege that Mr. Kahl was "well aware . . . that Element's primary motive for entering into the Agreement was to ensure [Mr. Kahl's] loyalty and promotion of Plaintiffs' business interests." ECF 1 ¶ 61. From this, a factfinder may reasonably infer that Mr. Kahl made the alleged misrepresentations to deceive Plaintiffs about his own motives and to secure a $125,000 retention bonus.

Plaintiffs also have adequately pleaded reasonable reliance. They allege that "Element reasonably relied on [Mr. Kahl's] representations about the nature of Biogen's business, entered into the Agreement, and made $100,000 . . . in payments to [Mr. Kahl] per the Agreement." ECF 1 ¶ 63. Plaintiffs made the payments on the condition that Mr. Kahl would "act[] in the very best interests of the Element group." ECF 1 ¶ 33. Thus, Plaintiffs likely would not have paid Mr. Kahl had they known he was operating a competing business. This sequence of events allows a reasonable inference, when construed in the light most favorable to Plaintiffs, that Plaintiffs were unaware that Biogen was a competitor, that they reasonably relied on Mr. Kahl's representation that Biogen was not a competitor, and that they had a right to rely on that representation. Any further challenge to Plaintiffs' reliance, if appropriate, may be raised at summary judgment or trial.

## B. Fourth Cause of Action: Breach of Fiduciary Duty

"To recover for breach of fiduciary duty, the plaintiff must prove, one, the existence of a fiduciary relationship between the parties; two, a breach of one or more of the fiduciary duties arising out of that relationship; and three, damage to the plaintiff resulting from a breach of one or more of those duties." *Evergreen W. Bus. Ctr., LLC v. Emmert*, 254 Or. App. 361, 367 (2012), *rev'd on other grounds*, 354 Or. 790 (2014). Defendants dispute only the second element and argue that Plaintiffs have not pleaded that Mr. Kahl breached his duty of loyalty.

Plaintiffs, however, premise their fourth cause of action on more than Mr. Kahl's failure to disclose "some yet-to-be-identified fact." ECF 14 at 11. An employee owes an employer a fiduciary duty; one aspect of this broad principle is that an employee must not actively compete with his employer during his employment. *See Crowd Mgmt. Servs., Inc. v. Finley*, 99 Or. App. 688, 690 (1989). Plaintiffs allege that Mr. Kahl misrepresented the true nature of Biogen's business and acted contrary to his duties to act in Element's interests. ECF 1, ¶¶ 41, 57-58. As discussed above, Mr. Kahl affirmatively represented that "Biogen was not engaged in testing and was operating independently of Portland Food as a non-competitive consultant."[2] ECF 1 ¶ 57. Plaintiffs allege, however, that "Biogen . . . offered many of the same services as Portland Food offered and was actively engaged in direct competition with Portland Food." *Id.* ¶ 58. After identifying the undisclosed conflict, Plaintiffs detail how Mr. Kahl allegedly acted against Element's best interests: he built Biogen by using Element's confidential customer lists and pricing guides, actively solicited clients for Biogen, and improperly diverted business from Portland Food to Biogen. ECF 1 ¶¶ 73-74. Plaintiffs have sufficiently pleaded their claim for breach of fiduciary duty.

**C. Fifth Cause of Action: Intentional Interference with Economic Relations**

To state a claim for intentional interference with economic relations, Plaintiffs must allege: "(1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relations; and (6) damages." *Nw. Nat. Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 497–98,

---

[2] Defendants' citation to *Williams v. Pilgrim Turkey Packers, Inc.*, 264 Or. 36, 43-44, (1972), is unpersuasive. The employee in that case did not violate his duty of loyalty because he fully disclosed the potential conflict to his employer. *See id.* Plaintiffs here allege that Mr. Kahl concealed from them the true nature of his competing business.

(1999). Defendants argue that Plaintiffs have not sufficiently pleaded the second element (intentional interference) and the fourth element (improper means or improper purpose).

Plaintiffs allege that Biogen intentionally interfered with Plaintiff's business relationships, satisfying the second element. "[I]ncidental interference . . . is not actionable." *Empire Fire & Marine Ins. Co. v. Fremont Indemnity Co.*, 90 Or. App. 56, 63 (1988). But Plaintiffs do not allege merely that Biogen incidentally interfered with Element's business relationships with its food company clients. Instead, Plaintiffs allege that Biogen "knew of the relationships Plaintiffs had and/or have with these various food companies" and that Biogen "intentionally interfered with Plaintiffs' business relationships." ECF 1 ¶¶ 79, 81. The circumstances of Mr. Kahl's alleged interference—that Mr. Kahl worked at Element as a General Manager while operating Biogen, misrepresented the nature of Biogen's business, and stood to gain from both diverting business from Element to his own company and from securing his retention bonus—allow a factfinder to draw the reasonable inference that Defendants' interference was intentional. Indeed, the allegations plausibly suggest that Mr. Kahl's goal was to interfere with Plaintiffs' business relationships to benefit his own firm.

Plaintiffs also adequately allege that Biogen accomplished this interference through improper means, satisfying the fourth element. Improper means are those that "violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." *Nw. Nat. Gas Co.*, 328 Or. at 498 (citation omitted). Plaintiffs allege that Mr. Kahl misrepresented the nature of Biogen's business, breached his duty of loyalty, and improperly solicited customers. ECF 1 ¶ 81. These are all improper means. *See, e.g., Sanford v. Hampton Res., Inc.*, 298 Or. App. 555, 563 (2016), *review denied*, 361, Or. 350, 393 (2017) (quotation marks omitted) (classifying "deceit or

misrepresentation" as improper means); *Diversified Marine, Inc. v. JT Marine, Inc.*, 2010 WL 3210848, at *3 (D. Or. Aug. 10, 2010) (noting that "misappropriation of confidential information, the breach of fiduciary duty, and fraudulent misrepresentation" are all "wrongful means" of interference). Plaintiffs have adequately pleaded their fifth cause of action.

## CONCLUSION

Defendants' motion to dismiss (ECF 14) is DENIED.

**IT IS SO ORDERED**.

DATED this 18th day of February, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge